IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CARDIOSOM, L.L.C.<br>615 West Carmel Drive<br>Carmel, Indiana 46032 | ) | |
| Plaintiff, | ) | No. ____________ |
| v. | ) | Judge ___________ |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

COMPLAINT

Plaintiff CardioSom, LLC ("CardioSom"), through its undersigned counsel, brings this action against defendant The United States of America ("United States" or "government"), and alleges the following:

NATURE OF THIS ACTION

1. This is an action for breach of a contract (the "Contract") between Cardiosom and the Centers for Medicare & Medicaid Services of the U.S. Department of Health and Human Services ("CMS").

2. The government abrogated and breached the Contract on July 15, 2008.

3. The government's abrogation and breach of the Contract has caused CardioSom substantial damages, both in loss of significant sums expended in preparation to perform the Contract and in lost profits.

PARTIES

4. CardioSom is a limited liability company organized and existing under the laws of the State of Indiana.

5. The United States is a sovereign government that is bound to honor both the contractual obligations it undertakes and the requirements of the Fifth Amendment to the U.S. Constitution.

6. CMS is an agency of the United States, and at all times relevant to this action has been acting on behalf of the United States.

FACTS

7. Medicare is a federal health insurance program for the aged and disabled. Among other things, the Medicare program provides and at all times relevant to this action has provided coverage for Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS"), including oxygen equipment, continuous positive airway pressure devices, respiratory assist devices, and related supplies, as more particularly described in Attachment A hereto ("Oxygen and Respiratory Equipment and Supplies"), for use by Medicare beneficiaries in their homes. The Medicare program is administered by CMS.

8. Prior to July 1, 2008, all Medicare participating suppliers of DMEPOS could furnish covered items of DMEPOS, including Oxygen and Respiratory Equipment and Supplies, to any Medicare beneficiary residing anywhere in the United States, and would be reimbursed for such items on the basis of a fee schedule. *See* 42 U.S.C. § 1395(m)(a); 42 C.F.R. §§ 414.210; 424.57. CardioSom is and at all times relevant to this action has been such a Medicare participating supplier.

9. To achieve Medicare program savings, in Section 302 of the Medicare Prescription Drug Improvement and Modernization Act of 2003 (the "MMA"), Congress established a program of competitive bidding for DMEPOS, under which contracts would be awarded to selected firms in specified regions for the supply of DMEPOS to Medicare

beneficiaries. *See* Medicare Prescription Drug Improvement and Modernization Act of 2003, H.R. 1, 108th Cong., Pub. L. No. 108-173, § 302 (2003) (codified at 42 U.S.C. § 1395w-3).

10. On April 10, 2007, CMS promulgated final regulations implementing the competitive bidding/selective supplier contracting program for DMEPOS. 72 Fed. Reg. 17992 (April 10, 2007) (codified at 42 C.F.R. Parts 411 and 414) (the "Regulations").

11. Under the MMA and the Regulations, CMS was required to conduct competitive bidding for certain items of DMEPOS, including Oxygen and Respiratory Equipment and Supplies, in 10 of the largest metropolitan statistical areas in 2007. This was the initial round of competitive bidding under Section 302 of the MMA (the "Initial Round").

12. The term of the Initial Round contracts was by law 3 years, from July 1, 2008 through June 30, 2011. *See, e.g.,* MMA § 302(b); CMS, *Medicare Claims Processing Manual,* ch. 36, § 20.5 (CMS Pub. 100-04) (CMS Trans. 1502) (May 9, 2008). The product categories and metropolitan statistical areas subject to the Initial Round of competitive bidding are listed on Attachment B hereto. The metropolitan statistical areas selected by CMS for competitive bidding are referred to in the Regulations as "competitive bid areas" or "CBAs." 42 C.F.R. § 414.402. CMS was required to solicit bids for DMEPOS items grouped into product categories for each CBA.

13. CMS was required to array the bid prices from low to high and, beginning with the lowest qualified bid, to select that number of contract suppliers sufficient to meet the projected demand for items in the product category in the CBA, but not more than that number (subject to special rules for small supplier participation). *See,* MMA § 302(b)(1); 42 C.F.R. § 414.414. Based on the bids submitted by the suppliers sufficient to meet projected demand, CMS was required to determine a "single payment amount" for each competitively bid item for

each CBA. Following these procedures, CMS would enter contracts with the selected suppliers, called "contract suppliers," under the Regulations. *See* 42 C.F.R. § 414.402.

14. CMS performed these functions, selecting a limited numbers of suppliers and establishing a single payment amount for each product category in each CBA as determined by the bids, as contemplated by and in accordance with the terms of MMA and the Regulations. By conducting competitive bidding and limiting the number of awarded suppliers, the government intended to achieve aggregate savings by providing the awarded contract suppliers higher volumes in exchange for reduced unit payments. In fact, the MMA and Regulations prohibited Medicare payment for competitively bid items furnished in CBAs to beneficiaries residing in the CBA where the items were furnished by non-contract suppliers (with a limited exception for rental of equipment in place on July 1, 2007). This, by statute and regulation, assured contract suppliers significant volumes that would be sufficient to enable them to reduce the per unit Medicare payment amounts for the competitively bid items.

15. CardioSom, along with all other applicants to become contract suppliers, was required to submit its application to become a contract supplier by no later than September 25, 2007. CardioSom timely submitted its application.

16. On May 21, 2008, CMS announced the contract suppliers and therby awarded to Cardiosom the Contract that is the subject of this action. CardioSom was selected as a contract supplier for 9 of the 10 CBAs for Oxygen and/or Respiratory Equipment and Supplies. Thereafter, in a document dated June 20, 2008 ("ratification agreement"), CardioSom and CMS ratifed and confirmed the Contract terms for the CBAs and the Oxygen and Respiratory Equipment and Supplies for which CMS had awarded the Contract to CardioSom.

17. From the time CMS announced that CardioSom was a contract supplier, and thus awarded the Contract to Cardiosom, CardioSom began to incur significant expenses to perform its responsibilities under the competitive bid program. Among other things, CardioSom rented additional space in CBAs, purchased inventory and hired staff.

18. Beginning on July 1, 2008, in accordance with the Regulations, CMS instructions, and the ratification agreement with CMS, CardioSom began supplying items in accordance with the requirements of the MMA, Regulations, the Contract with CMS, and CMS instructions.

19. On July 15, 2008, Congress enacted the Medicare Improvements for Patients and Providers Act of 2008, HR 6331, 110th Cong., Pub. L. No. 110-275 (July 15, 2008) (the "2008 Act"). Under the 2008 Act, Congress abrogated and terminated the contracts awarded to contract suppliers in Round 1 of competitive bidding, including the Contract, after those contracts had been awarded and were in effect and being performed. In addition, Congress nullified Round 1 and provided that CMS would re-conduct the Round 1 bidding, so that previously awarded contract suppliers are required to re-compete and they have no assurance of being the contract suppliers in the new "Round 1." The 2008 Act provides in pertinent part as follows:

> (D) CHANGES IN COMPETITIVE ACQUISITION PROGRAMS.—
>
> (i) ROUND 1 OF COMPETITIVE ACQUISITION PROGRAM.—
>
> Notwithstanding subparagraph (B)(i)(I) [initially establishing Round 1 of competitive bidding] and in implementing the first round of the competitive acquisition programs under this section—

> (I) ***the contracts awarded under this section before the date of the enactment of this subparagraph are terminated, no payment shall be made under this title on or after the date of the enactment of this subparagraph based on such a contract, and, to the extent that any damages may be applicable as a result of the termination of such contracts, such damages shall be payable from the Federal Supplementary Medical Insurance Trust Fund under section 1841[.]***

2008 Act, § 154 (emphasis added).

20. As a direct and proximate result of the abrogation of the government's Contract with CardioSom by operation of the 2008 Act, CardioSom has lost the entire amount it invested in leases, personnel, inventory and other items in reliance upon and in preparation to furnish Oxygen and Respiratory Equipment and Supplies in the 9 CBAs in which it was a Round 1 contract supplier.

21. As a direct and proximate result of the abrogation of the government's Contract with CardioSom by operation of the 2008 Act, CardioSom lost the profits it would have earned as a contract supplier during the 3 year period of the Contract, *i.e.,* from July 1, 2008 through June 30, 2011.

COUNT I

(Breach of Contract)

22. Cardiosom realleges all allegations of paragraphs 1 thorugh 19 above.

23. By reason of the foregoing, the government is liable to Cardiosom for breach of the Contract and for all damages incurred by Cardiosom.

COUNT II

(Uncompensated Taking of Property)

24. Cardiosom realleges all allegations of paragraphs 1 thorugh 21 above.

25. The Contract and all amounts Cardiosom has invested in order to perform the Contract constitute private property subject to and protected by the Just Compensation Clause of the Fifth Amendment to the U. S. Constitution.

26. By reason of the foregoing, the government has taken Cardiosom's property, and because the government has not yet paid Cardiosom any just compensation, the government is now liable to pay Cardiosom just compensation from the date of the taking.

PRAYER FOR RELIEF

Accordingly, CardioSom demands relief and judgment as follows:

On Count I, for all damages resulting from the government's breach of contract

On Count II, for just compensation as required by the Fifth Amendment.

On both Counts, for all reasonable attorneys' fees, litigation expenses and costs incurred by Cardiosom in this action, in accordance with 28 U.S.C. § 4654(c) or as otherwise may be authorized by law;

On all Counts, for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 22, 2008

Jerry Stouck (counsel of record)
William B. Eck
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
(202) 331-3173 phone
(202) 261-4751 facsimile
*Attorneys for Plaintiff CardioSom, LLC*