# In the United States Court of Federal Claims

Case No. 08-533C
(Filed: February 23, 2010)
TO BE PUBLISHED

| | | |
|---|---|---|
| ****************************************** | | |
| CARDIOSOM, LLC, | * | 42 U.S.C. §1395w-3(a)(1)(D); Durable |
| *Plaintiff,* | * | Medical Equipment, Prosthetic Devices, |
| | * | Orthotics, and Supplies Competitive |
| v. | * | Acquisition Program ("DMEPOS CAP"); |
| | * | statutory construction; prohibition on an |
| THE UNITED STATES OF | * | "independent cause of action or right to |
| AMERICA, | * | administrative or judicial review ;" damages |
| *Defendant.* | * | payable from Federal Supplementary |
| | * | Medical Insurance Trust Fund |
| ****************************************** | | |

*Jerry Stouck*, Greenberg Traurig, Washington, DC, attorney of record for Plaintiff.

*Anuj Vohra*, with whom were **Mark A. Melnick, Jeanne E. Davidson and Tony West,** Department of Justice, Washington, D.C., for Defendant.

*Amelia C. Moorstein*, law clerk.

## OPINION

**BASKIR, Judge**

This case comes before the Court on Defendant's Motion to Dismiss and Plaintiff's and Defendant's Cross-Motions for Summary Judgment. Because 42 U.S.C. §1395w-3(a)(1)(D) prohibits judicial review of Plaintiff's claims, the Court finds there is no jurisdiction. Therefore, we **GRANT Defendant's Motion to Dismiss** and **DISMISS as moot Plaintiff's and Defendant's Cross-Motions for Summary Judgment.**

**I.   BACKGROUND**

   A.   *Statutory Background*

In December 2003, Medicare Part B, a voluntary program that provides Medicare beneficiaries with supplemental medical insurance benefits and other health care services (*see* 42 U.S.C. §§1395j -1395w-4), was modified by the Medicare Prescription Drug Improvement and Modernization Act of 2003 (MMA), Pub. L. No. 108-173.

Specifically, Section 302 of the MMA, codified at 42 U.S.C. §1395w-3, established a competitive acquisition process for certain items, including "durable medical equipment, medical supplies," enteral equipment, and orthotics.  *See* 42 U.S.C. §1395w-3(a)(2)(A); 42 U.S.C. §1395w-3(a)(2)(B); 42 U.S.C. §1395w-3(a)(2)(C).

This program was called the Durable Medical Equipment, Prosthetic Devices, Orthotics, and Supplies Competitive Acquisition Program (DMEPOS CAP).  The Center for Medicare & Medicaid Services (CMS) promulgated a final rule in April 2007 that set forth a methodology for determining the competitive bidding payment amounts, 42 C.F.R. § 414.416, and contract terms, 42 C.F.R. § 414.422.

Congress modified the DMEPOS acquisition process when it enacted the Medicare Improvements for Patients and Providers Act of 2008 (MIPPA), Pub. L. 110-275, on July 15, 2008.  Section 154 of the MIPPA, codified at 42 U.S.C. §1395w-3, in pertinent part states:

> (i) Round 1 of competitive acquisition program
> Notwithstanding subparagraph (B)(i)(I) and in implementing the first round of the competitive acquisition programs under this section--
>
> (I) *the contracts awarded under this section before the date of the enactment of this subparagraph are terminated*, no payment shall be made under this subchapter on or after the date of the enactment of this subparagraph based on such a contract, and, to the extent that any damages may be applicable as a result of the termination of such contracts, such damages shall be payable from the Federal Supplementary Medical Insurance Trust Fund under section 1395t of this title;
>
> (II) the Secretary shall conduct the competition for such round in a manner so that it occurs in 2009 with respect to the same items and services and the same areas, except as provided in subclauses (III) and (IV);
>
> Nothing in subclause (I) shall be construed to provide an independent cause of action or right to administrative or judicial review with regard to the termination provided under such subclause

(emphasis added).  Thus, this statute terminated all contracts CMS had previously entered into under the DMEPOS CAP.

In accordance with the statute, at the time of this writing CMS is conducting a re-bid program. Contractors were required to submit their bids by December 21, 2009. Centers for Medicare & Medicaid Services, *Timeline DMEPOS Competitive Bidding* (Oct. 21, 2009), http://www.cms.hhs.gov/DMEPOSCompetitiveBid/01A0 Timeline.asp#TopOfPage. The contracting process is set to begin in June 2010; contract suppliers will be announced in September 2010, and the contracts will be implemented starting January 1, 2011. *Id.* Cardiosom has submitted bids for the Round 1 competitive re-bid, but it will not know until June 2010 whether the new bids were accepted. Tr. 4 - 5.

On October 30, 2009, CMS established by rule an administrative process to review and settle damage claims arising out of terminated contracts. *See* 42 C.F.R § 414.425. Claimants were instructed to file documented dollar claims no later than April 1, 2010 (90 days after January 1, 2010), which CMS promised to process within 120 days of initial receipt of the claim. *Id.* Plaintiff is presumably eligible to have its claims addressed through this process, thus rendering this Complaint moot. However, Plaintiff advised the Court at oral argument that it would not submit an administrative claim, but would continue to press this case. Tr. 51.

### B. *Factual Background*

The facts are taken from the parties' briefs and oral argument and are not in dispute. In accordance with the acquisition methodology set forth in the CMS final rule, CMS entered into DMEPOS CAP contracts with 330 providers, including Cardiosom. Cardiosom's contract started July 1, 2008, and was for a three-year duration. The contract authorized Cardiosom to receive reimbursement for specific categories of DMEPOS in nine competitive bidding areas.

When the MIPPA was passed on July 15, 2008, Cardiosom's contract was terminated. CMS notified Cardiosom by a letter dated July 21, 2008, that its DMEPOS CAP contract was terminated effective June 30, 2008. Cardiosom filed its Complaint in this Court on July 22, 2008. In its Complaint, Cardiosom alleges that the contract termination resulted in a breach of contract, or alternatively, that the contract termination resulted in an uncompensated taking of property. This case comes before us on the Government's Motion to Dismiss for lack of jurisdiction and Cross-Motion for Summary Judgment on liability, and Cardiosom's Cross-Motion for Summary Judgment on liability.

## II.   DISCUSSION

### A.   *Standard of Review*

In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the Court accepts as true the undisputed allegations in the complaint

and draws all inferences in favor of the plaintiff.  *Lavezzo v. United States*, 74 Fed. Cl. 502, 507 (2006) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  If necessary to resolve the jurisdictional issues, the Court may also examine relevant evidence beyond the pleadings.  *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999).  "Subject matter jurisdiction is a threshold matter which must be addressed before the Court reaches the merits of plaintiff's claims." *Deponte Invs., Inc. v. United States*, 54 Fed. Cl. 112, 115 (2002) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998)).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."  *Steel Co.,* 523 U.S. at 94 (quoting *Ex Parte McCardle,* 74 U.S. 506, 514 (1869)).

      B.     *Section 154 Language*

The last sentence of Section 154 plainly bars this Court from hearing Cardiosom's claim.  The sentence states that there is to be no "independent cause of action or right to administrative or judicial review with regard to the termination." 42 U.S.C. §1395w-3(a)(1)(D)(I).

"It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. 137 (1803).  A basic premise of statutory construction is that the court must "give effect, if possible, to every clause and word of [the] statute." *Kyocera Wireless Corp. v. International Trade Com'n,* 545 F.3d 1340, 1355 (Fed. Cir. 2008) (quoting *United States v. Menasche,* 348 U.S. 538, 538 - 39 (1955)).  When the court is interpreting a statute, it is presumed that the same words used twice in the same act have the same meaning.  *See Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561 (1995).

Similar language precluding administrative or judicial review has appeared numerous times throughout the Medicare Act.  This language has been interpreted as divesting Courts of jurisdiction over certain claims.  In *All Florida Network Corp. v. United States,* 82 Fed. Cl. 468 (2008), this Court held that language stating "there shall be no administrative or judicial review...of...the awarding of contracts" for the furnishing of DMEPOS precluded the Court from reviewing CMS' decision to disqualify a bidder.  In *Carolina Medical Sales, Inc. v. Leavitt,* 559 F.Supp.2d 69 (D.D.C. 2008), the Court held that language stating "there shall be no administrative or judicial review...of...the selection of items and services for competitive acquisition under subsection (a)(2)" precluded the court from hearing a challenge by a DMEPOS supplier to CMS' designation of mail-order diabetic supplies as items for competitive bidding under the competitive acquisition program.  In *Painter v. Shalala,* 97 F.3d 1351, the court dismissed a complaint challenging the Department of Health and Human Services determination of physician payment amounts under Medicare Part B where the relevant statute stated, "there shall be no administrative or judicial review under section 1395ff of this title or otherwise of...the determination of conversion factors."

The Court must conclude that Section 154 similarly prohibits judicial review. Specifically, the statute's plain words prohibit contractors from bringing any suit arising from the contract termination, such as claims for damages resulting from the termination. In its effort to escape this plain meaning, Plaintiff argues that since Section 154 also states that "any damages [that] may be applicable" are to be paid out of the Medicare Trust Fund, contractors are not precluded from seeking the "pre-existing" remedy of damages. Tr. 57 - 59. Plaintiff construes the prohibition on "any independent cause of action or right to administrative review" as only precluding contractors from seeking "additional" or "new" remedies not provided for in Section 154. *Id*. We reject Plaintiff's interpretation for several reasons.

First, there is no reason that the language should be construed so narrowly. In *All Florida,* the Court rejected Plaintiff's argument that "awarding of contracts" should be read narrowly to exclude "eligibility determinations." *All Florida,* 82 Fed. Cl. at 473. The Court reasoned that eligibility determinations are related to the award process and therefore were included in the meaning of "awarding of contracts." *Id.* Because the entire provision at issue was "broad, unqualified, and clear," the Court in *Carolina Medical Sales* rejected Plaintiff's argument that "items" should be read narrowly to exclude the method by which the competitively acquired items are delivered. *Carolina Medical Sales,* 559 F.Supp.2d at 77. In *Painter,* the Court similarly rejected Plaintiff's argument that the structure of the Medicare Act supports a limited reading of the no-review provision. *Painter,* 97 F.3d at 1356. We are not persuaded that the variations in language of these prohibiting provisions serve to impair the plain meaning of Section 154.

Second, despite the Court's exhortation that Plaintiff must offer an interpretation of Section 154 different from its apparent plain meaning, the best counsel could come up with was its argument that Section 154 only bars "new" or "additional" remedies. Plaintiff cites injunctive relief as an example of such a "new" remedy. Pl.'s Resp. 16. However, even without this provision, Plaintiff could not bring a claim for specific performance in either this Court or in a District Court. The Tucker Act gives this Court the power to grant equitable adjustments and monetary relief for breaches of contract, but this Court cannot grant injunctive relief for breaches of contract. *See* 28 U.S.C § 1491. Federal district courts consistently hold that the Tucker Act impliedly prohibits district courts from ordering specific performance by the United States on its alleged contractual obligations. *See, e.g., Tuscon Airport Authority v. General Dynamics Corp.,* 136 F.3d 641, 646 (9th Cir. 1998) (holding that contract- based claims for declaratory and injunctive relief are impliedly barred by the Tucker Act); *Coggeshall Development Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir. 1989) (no waiver of sovereign immunity for the remedy of specific performance resulting from an alleged breach of contract); *Sharp v. Weinberger,* 798 F.2d 1521, 1523 (D.C.Cir. 1986) (Tucker Act impliedly forbids specific and declaratory relief on contract claims). If the remedy that Plaintiff contends is barred by Section 154 cannot be granted in any event, then Plaintiff's alternate interpretation of the statutory language becomes meaningless.

C.  *Source of Damages*

Although Section 154 prohibits contractors from bringing claims for damages, it also provides that any damages that "may be applicable as a result of the termination of such contracts" are to be paid from the Federal Supplementary Medical Insurance Trust Fund.  42 U.S.C. §1395w-3(a)(1)(D)(I).  Plaintiff makes much of this seeming inconsistency.

The damages clause may be reconciled with the prohibition on judicial review.  Section 154 states that there is no *right* to administrative or judicial review (emphasis added).  The plain meaning of "right" means "a power, privilege, or immunity secured to a person by law." *Blacks Law Dictionary* 1347 (8th ed. 2004).  While contractors are not entitled to administrative or judicial review by law, nothing in the language of the statute prohibits a *voluntary* review of claims.  As we noted earlier, CMS has set up a process by which it will review claims and pay out damages to contractors whose contracts were terminated by the MIPPA.  *See* 42 C.F.R. § 414.425.  Congress has designated a source of funds to pay out damages in anticipation that CMS would establish such a process.

D.  *Takings Claim*

Just as the Court does not have jurisdiction to hear Plaintiff's claims for damages, we do not have jurisdiction to hear Plaintiff's takings claim.  The language in Section 154 prohibits review of any claim related to the contract termination.  Plaintiff's takings claim is related to the termination because but for the termination, Plaintiff would not have brought this claim.

Defendant's Motion to Dismiss discusses the jurisdictional aspects of Plaintiff's takings claim.  Plaintiff's response does not argue this issue, but rather for the first time requests that the Court defer consideration of the takings claim until resolution of other aspects of the Motion to Dismiss.  Deferral of the briefing of this issue should have been proposed when the briefing schedule was established.  Plaintiff neglected to file such a timely motion, and the Court will not now consider the request.  *See* Special Procedures Order ¶ 10.  Furthermore, by failing to respond to Defendant's argument regarding the jurisdictional defect of the takings claim, Plaintiff has effectively conceded the issue.  *See* RCFC 7.2(b)(1); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("an unresponsive response is no response").

### III.  CONCLUSION

For the foregoing reasons, **Defendant's Motion to Dismiss is GRANTED**.  **Plaintiff's Motion for Summary Judgment** and **Defendant's Cross-Motion for Summary Judgment are DISMISSED as moot.** The Clerk is directed to **enter**

**judgment for the Defendant and DISMISS the Complaint.** Parties are to bear their own costs.

**IT IS SO ORDERED.**

                                             s/ Lawrence M. Baskir
                                             LAWRENCE M. BASKIR
                                                       Judge