# In the United States Court of Federal Claims

No. 08-533C

(E-Filed:  April 30, 2014)

|  |  |  |
|---|---|---|
| CARDIOSOM, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | <u>Chevron</u> Deference; Regulatory |
| | ) | Interpretation; Motion to |
| | ) | Dismiss for Lack of Subject |
| v. | ) | Matter Jurisdiction under |
| | ) | RCFC 12(b)(1); Motion to |
| THE UNITED STATES, | ) | Dismiss for Failure to State a |
| | ) | Claim under RCFC 12(b)(6); |
| Defendant. | ) | Motion for Summary Judgment |
| | ) | under RCFC 56. |
| | ) | |

<u>Jerry Stouck</u>, Washington, D.C., for plaintiff.

<u>Gregg M. Schwind</u>, Senior Trial Counsel, with whom were <u>Stuart F. Delery</u>, Assistant Attorney General; <u>Bryant G. Snee</u>, Acting Director; <u>Steven J. Gillingham</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

<u>OPINION and ORDER</u>

CAMPBELL-SMITH, Chief Judge.

This is a claim for breach of contract and an uncompensated taking of property that arises out of the government's termination of plaintiff's contract to supply durable medical equipment to Medicare recipients.  <u>See</u> Corrected Compl. (Compl.), ECF No. 10. This case was transferred to the undersigned on October 7, 2013.  ECF No. 77.

Among the matters pending before the court is defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  ECF No. 81 (Def.'s Mot.).  Defendant's motion is ripe for consideration.  For the reasons explained below, defendant's motion to dismiss is **DENIED**.

I.      BACKGROUND

        The facts of this case are not in dispute.  These detailed facts have been ably set
forth in the previous decisions of both the Federal Circuit and this court.  See Cardiosom,
L.L.C. v. United States (Cardiosom II), 656 F.3d 1322, 1324-25 (Fed. Cir. 2011), rev'g
91 Fed. Cl. 659 (2010); Cardiosom, L.L.C. v. United States (Cardiosom I), 91 Fed. Cl.
659, 660-62 (2010), rev'd, 656 F.3d 1322 (Fed. Cir. 2011).  For ease of reference,
however, an abbreviated factual overview is provided below.

        Effective July 1, 2008, Cardiosom, L.L.C. (Plaintiff or Cardiosom) contracted with
the Centers for Medicare & Medicaid Services (CMS) of the Department of Health &
Human Services (Defendant or HHS) to provide oxygen and/or respiratory equipment
and supplies in nine different metropolitan areas for a period of three years.  Compl. ¶¶
11-12, 16.

        On July 15, 2008, Congress passed legislation terminating all contracts, including
plaintiff's, that had been issued under what was known as Round 1 of HHS's plan to
redefine the way in which it purchased durable medical equipment through the Medicare
program.  42 U.S.C. § 1395w-3.  Section 1395w-3, which is alternately known as
Section 154 of the 2008 Medicare Improvements for Patients and Providers Act (MIPPA)
or the 2008 Amendment, included a provision withdrawing the right to administrative or
judicial review "with regard to the termination." § 1395w-3(a)(1)(D)(i) (judicial review
withholding provision).

        HHS then promulgated a regulation in which it established an administrative
process through which it would pay specified damages to terminated suppliers.  42 C.F.R.
§ 414.425.  The regulation provided that CMS would make the determination regarding
which of the claimed damages were compensable, and provided that CMS's
"determination [would be] final and not subject to administrative or judicial review."
§ 414.425(f)(2)(vi).  The requisite notice and a public comment period preceded the
promulgation of the regulation.  See Def.'s Mot. 3 (citing 74 Fed. Reg. 61,738-01
(Nov.  25, 2009)).

        Cardiosom submitted a damages claim through the CMS administrative process in
March 2010 and received partial payment in August 2011.  See Cardiosom's Second
Supp. Br., ECF No. 69, Ex. A (claim), Ex. B (partial payment).

        In February 2010, the judge to whom this case was previously assigned granted
defendant's motion to dismiss for lack of jurisdiction, on the ground that § 1395w-
3(a)(1)(D) prohibited judicial review of plaintiff's claims.  Cardiosom I, 91 Fed. Cl. at

660.  The Federal Circuit reversed and remanded the matter, holding that § 1395w-3 "did not withdraw traditional contract jurisdiction under the Tucker Act [and determining that] plaintiff states a claim over which the Court of Federal Claims has jurisdiction." Cardiosom II, 656 F.3d at 1324.  The Federal Circuit elaborated:

> [a]s we read it, the 2008 Amendment left open the question of the consequences of Congress's chosen route, and any private remedies arising therefrom. More specifically, the amendment left untrammeled the subject matter jurisdiction of the Court of Federal Claims to hear and decide breach of contract claims resulting from these terminations. Whatever may be the rule regarding nonreviewability of the act of termination, or the absence of challenge to the administrative remedy authorized, the legal consequences of the terminations can still be determined under existing federal law governing contract disputes with the Government.

Cardiosom II, 656 F.3d at 1330 (emphasis added).

The Federal Circuit also observed that the meaning of the judicial review withholding provision in § 1395w-3 was susceptible to at least three meanings, any of which was consistent with Congress's apparent purpose.  See id. at 1327-29.  First,

> Congress could have intended that the statute not be read to provide an 'independent cause of action or right to administrative or judicial review with regard to the termination,' with respect to the structure of the administrative compensation mechanism established by the Secretary, or perhaps even to the rewards from the special fund created by the statute.

Id. at 1328.  Second, a "somewhat different but equally plausible, interpretation of the judicial review withholding provision is that there is to be no independent judicial review of Congress's decision to terminate the existing contracts."  Id. at 1329.  And third, a

> possible reading of the statutory language is that it is intended to prevent judicial or administrative review by third parties. That is, [the term] 'independent' [as it appears] in the statute could be interpreted to mean 'independent of the contracting parties,' precluding litigation over collateral damages arising out of the terminations.

Id.

Finally, the Federal Circuit observed that "there are questions with regard to the interaction of this administrative process with the established judicial process for resolving Government contract disputes under the Tucker Act," and that it was not clear "whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process . . . could thereafter maintain a court suit for other damage elements," leaving the resolution of this question to the trial court.  Id. at 1328-29.

The statutory language at issue is set forth in its entirety below.

(D) Changes in competitive acquisition programs

(i)   Round 1 of competitive acquisition program

. . .

(I)  the  contracts  awarded  under  this  section  before  July  15,  2008,  are terminated,  no  payment  shall  be  made  under  this  subchapter  on  or  after July  15,  2008,  based  on  such  a  contract,  and,  to the extent that any damages may be applicable as a result of the termination of such contracts, such  damages  shall  be  payable  from  the  Federal  Supplementary  Medical Insurance  Trust  Fund  under  section  1395t  of  this  title;

. . .

(IV) . . .

Nothing in subclause (I) shall be construed to provide an independent cause of  action  or  right  to  administrative  or  judicial  review  with  regard  to  the termination provided under such subclause.

§ 1395w-3(a)(1)(D)(i) (emphasis added).

HHS established an administrative process through which aggrieved suppliers could submit damages claims, and the agency interpreted the judicial review withholding provision to mean that the "Determining Authority's determination is final and not subject to administrative or judicial review."  § 414.425(f)(2)(vi).  The Determining Authority in that administrative process is CMS. § 414.425(f)(2).

Defendant now moves for dismissal of Cardiosom's complaint for both lack of jurisdiction and failure to state a claim upon which relief may be granted.

4

Before turning to the substance of defendant's motion, however, the court addresses two procedural matters of importance. As to the first matter, defendant brought its motion under both Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. Among the facts to which defendant adverts in its motion are Cardiosom's submission of a claim for damages to CMS in March 2010 and Cardiosom's receipt of partial payment in August 2011. Def.'s Mot. 4. These facts were not included in either Cardiosom's originally filed complaint or its corrected complaint, both filed in 2008. Rule 12(d) instructs that if a motion to dismiss under 12(b)(6) involves "matters outside the pleadings [that] are presented [to] and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56." RCFC 12(d). Rule 12(d) further instructs that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. The court does not exclude the factual information pertaining to Cardiosom's administrative claim and partial payment. By choosing to consider—rather than to exclude—the matters presented beyond what was pleaded, the court treats defendant's Rule 12(b)(6) motion to dismiss as a summary judgment motion under Rule 56.

On November 5, 2013, the court held a telephonic status conference with the parties to address the current posture of the case based on the issues that had been raised in the dispositive motions filed prior to the Federal Circuit's opinion. As defendant had represented during the status conference, defendant subsequently filed a motion to dismiss, to which plaintiff filed an opposition (Pl.'s Opp.), ECF No. 82, and defendant filed a reply (Def.'s Reply), ECF No. 83. The court is satisfied that the parties now have had a reasonable opportunity to present all the material pertinent to defendant's instant motion.

As to the second procedural matter, the defendant previously filed a motion to dismiss under both Rules 12(b)(1) and 12(b)(6) that led to the decision in Cardiosom I. See Def.'s Mot. Dismiss, May 28, 2009, ECF No. 33. Rule 12(g)(2) prohibits a party that has brought a motion under Rule 12(b) from submitting "another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." RCFC 12(g)(2). Because defendant's current motion to dismiss under Rule 12(b)(1) responds to the Federal Circuit's August 2011 opinion, which issued well after defendant filed its earlier motion to dismiss, the court finds that the defenses or objections now raised in defendant's instant motion were not available to defendant in 2009, and thus are not barred from consideration by Rule 12(g).

Turning now to the substance of defendant's motion, the court first considers defendant's challenge to the court's jurisdiction, and then defendant's claim that plaintiff has failed to state a claim for which relief may be granted.

II.     DEFENDANT'S RULE 12(b)(1) MOTION

Defendant acknowledges that the Federal Circuit held that this court has jurisdiction over a breach of contract claim, but defendant argues that such jurisdiction does not extend to the claim of a supplier who received partial payment through the CMS administrative process, as Cardiosom did.

> [A]lthough the Cardiosom II court held that the Court of Federal Claims has jurisdiction to consider a breach claim, the limits of that jurisdiction remain undefined. Specifically left unanswered – and very relevant to Cardiosom's claim on remand – is whether a . . . supplier whose contract was terminated may seek damages beyond those awarded as a result of the CMS administrative process established in 42 C.F.R. § 414.425. [Cardiosom II, 656 F.3d] at 1329. In fact, the Court of Appeals suggested that such a suit cannot be maintained. Id. ("Less clear is whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process . . . could thereafter maintain a court suit for other damage elements, such as loss of profits . . . .").

Def.'s Mot. 8.

Defendant argues that given the ambiguity identified by the Federal Circuit in the judicial review withholding provision, as evidenced by the three possible meanings described by the circuit court, this court must review the implementing regulation, § 414.425(f)(2)(vi), with Chevron deference. See id. 12. Defendant contends that because the regulation "is clear on its face in barring any judicial review, this Court must find that it lacks jurisdiction." Id. Defendant urges that a correct application of Chevron deference compels the court to find that the agency's determination is final and that the court "has no authority to review the damages award or award Cardiosom a greater amount." Id. at 13 (emphasis added). Defendant asserts that the court "should, therefore, dismiss Cardiosom's complaint." Id.

For the reasons explained below, the court finds that the judicial review withholding provision upon which defendant relies, 42 C.F.R. § 414.425(f)(2)(vi), is not entitled to Chevron deference. As previously held by the Federal Circuit, this court has jurisdiction to hear plaintiff's claim. See, Cardiosom II, 656 F.3d at 1324.

A.      Standard of Review

Pursuant to the Tucker Act, this court has limited jurisdiction to hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must satisfy the court that "a separate source of substantive law . . . creates the right to money damages." Id. at 1306 (internal quotation marks omitted).

"[I]n the area of government contracts . . . there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement." Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (internal quotation marks omitted); see also United States v. Winstar Corp., 518 U.S. 839, 885 (1996) (plurality opinion) (noting that "damages are always the default remedy for breach of contract"). This presumption provides a money-mandating source. The Takings Clause of the Fifth Amendment also furnishes a money-mandating source. See Jan's Helicopter, 525 F.3d at 1309.

If subject matter jurisdiction is challenged, plaintiff must establish the court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). When a jurisdictional challenge is raised in a motion to dismiss, "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (internal quotation marks omitted). The court may look, however, beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. RCFC 12(h)(3).

B.      Chevron Deference is Not Appropriate Here

1.      The Applicable Legal Standard

A recent Court of Federal Claims decision set forth a useful discussion of Chevron deference.

Under Chevron, this court first must determine "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). To determine the intent of Congress, the court looks to the language of the statute itself.  Delverde, SrL v. United States, 202 F.3d 1360, 1363 (Fed. Cir. 2000).  Beyond the statute's text, tools of statutory construction may be used, including the statute's structure, canons of statutory construction, and legislative history. Id.; see also Heino v. Shinseki, 683 F.3d 1372, 1378 (Fed. Cir. 2012). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, 467 U.S. at 843 n.9.

However, "if the statute is silent or ambiguous with respect to the specific issue," a court must proceed to the second step of Chevron, which is to ask whether the implementing agency's interpretation of the statute is reasonable. Id. at 843; see also Ad Hoc Shrimp Trade Action Comm. v. United States, 596 F.3d 1365, 1369 (Fed. Cir. 2010). The court must not "impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation."  Chevron, 467 U.S. at 843 (footnote omitted).  Rather, "Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980 (2005) (citation omitted).

In determining whether an agency's interpretation of a statute is reasonable, an agency's construction is entitled to deference if it is not in conflict with the plain language of the statute or the congressional intent or purpose of the statute. See Nat'l R.R. Passenger Corp. v. Boston & Me. Corp., 503 U.S. 407, 417 (1992) ("If the agency interpretation is not in conflict with the plain language of the statute, deference is due."); Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 233 (1986); Chem. Mfrs. Ass'n v. NRDC, Inc., 470 U.S. 116, 126 (1985) ("We should defer to [the agency's] view unless the legislative history or the purpose and structure of the statute clearly reveal a contrary intent on the part of Congress."). In addition, an agency's interpretation of a particular statutory provision qualifies for Chevron deference when that interpretation is reached through formal

> proceedings, such as by an agency's power to engage in notice-and-comment rulemaking.  United States v. Mead Corp., 533 U.S. 218, 229 (2001); Wheatland Tube Co. v. United States, 495 F.3d 1355, 1360 (Fed. Cir. 2007).

Kingdomware Techs., Inc. v. United States, 107 Fed. Cl. 226, 237-38 (2012).

"Chevron deference . . . is not accorded merely because the statute is ambiguous and an administrative official is involved. To begin with, the rule must be promulgated pursuant to authority Congress has delegated to the official." Gonzales v. Oregon, 546 U.S. 243, 258 (2006) (citing Mead Corp., 533 U.S. at 226-27).  Under Chevron step two, a court need not defer to an agency rule that is "'arbitrary or capricious in substance, or manifestly contrary to the statute.'"  Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 711-12 (2011) (quoting Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 242 (2004)).

    2.  The Positions of the Parties

The parties disagree regarding whether defendant is entitled to Chevron deference for its regulation interpreting § 1395w-3(a)(1)(D)(i).  Defendant asserts deference to the regulation is due because

> the Cardiosom II holding that MIPPA's judicial review provision is ambiguous means that, in order to determine the effect of the provision, the Court first must consider HHS's implementation of the statute in its regulation.  In doing so, the Court must evaluate, under the ordinary Chevron analysis, the validity of HHS's interpretation of the statute, and in particular its interpretation of the ambiguous judicial review provision.  If the Court finds that the HHS regulation is a permissible interpretation, then the Court must defer to the regulation.  Deference to the HHS regulation, which bars further administrative and judicial review, requires dismissal of Cardiosom's complaint on remand.

Def.'s Mot. 8.

Plaintiff disagrees, asserting that HHS "has no authority to promulgate rules regulating this Court's jurisdiction."  Pl.'s Opp. 5.  Plaintiff points to the source of HHS's authority to promulgate rules implementing the Medicare program, 42 U.S.C. § 1302, and to the delegation to the Secretary to make such rules and regulations "as may be necessary for the efficient administration of the functions with which each is charged under this chapter."  Id. at 5-6 (emphasis omitted).  Plaintiff argues that a regulation

precluding Tucker Act jurisdiction "would be beyond HHS's rulemaking authority" under § 1302.  Id. at 6.

Defendant replies that HHS promulgated § 414.425 pursuant to authority granted in § 1395w-3, not § 1302, which defendant describes as providing to HHS "broad statutory authority to administer the Medicare program Part B."  Def.'s Reply 5-6.

### 3.  Discussion

Plaintiff correctly asserts that defendant has no authority to limit this court's jurisdiction through its rule making powers.  A federal court owes no deference to an agency's interpretation of the court's subject matter jurisdiction.

"[T]he Supreme Court has repeatedly affirmed that federal courts have an independent obligation to determine their own subject-matter jurisdiction." Shweika v. Dep't of Homeland Security, 723 F.3d 710, 719 (6th Cir. 2013) (citing Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998)).

As discussed below, numerous circuit courts have considered whether Chevron deference is due to an agency regulation interpreting a statutory judicial review provision, and have found uniformly that no Chevron deference is given because the task of determining a federal court's jurisdiction falls to the court, not an agency.[1]  Courts have reasoned that no deference is warranted when an agency's regulation purporting to construe a court's subject matter jurisdiction "proceed[s] neither from a congressional delegation nor from agency expertise."  Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior, 252 F.3d 473, 479 (D.C. Cir. 2001), modified on denial for reh'g, 270 F.3d 957 (D.C. Cir. 2001); see also Friends of the Everglades v. U.S. EPA, 699 F.3d 1280, 1285 (11th Cir. 2012) ("[T]he Court owes no deference to an agency's interpretation of a statute that defines this Court's subject matter jurisdiction.") (quoting Sierra Club v. Leavitt, 355 F. Supp. 2d 544, 548 (D.D.C. 2005)); Fox Television Stations, Inc. v. FCC, 280 F.3d 1027, 1038-39 (D.C. Cir. 2002)(citing Adams Fruit Co. v. Barrett, 494 U.S. 638, 650 (1990) ("Nor is an agency's interpretation of a statutory provision defining the jurisdiction of the court entitled to our deference under Chevron."), modified on reh'g, 293 F.3d 537 (D.C. Cir. 2002); Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000) ("[A]ssuming the ambiguity of the statutory terms . . . the fact that courts defer to the

---

[1]     The Supreme Court has concluded that Chevron deference applies to an agency's interpretation of its own jurisdiction, making clear, however, that agency jurisdiction and federal court jurisdiction are distinct concepts.  See City of Arlington, Tex. v. FCC, 133 S. Ct. 1863, 1868 (2013).

INS's construction of its statutory powers of deportation does not mean that similar deference is warranted with respect to the enforcement of this court's jurisdictional limitations. . . . [T]he determination of our jurisdiction is exclusively for the court to decide.").

In Murphy Exploration, the D.C. Circuit Court of Appeals relied on Adams Fruit Company for the proposition that an agency has no authority to determine a federal court's jurisdiction. Murphy Exploration, 252 F.3d at 479. The statute in question conferred "jurisdiction on courts to consider challenges to 'administrative proceedings' that the agency fail[ed] to resolve within 33 months after they [were] commenced," and the plaintiff who brought the action disputed the agency's determination regarding what event triggered the running of the 33-month time period. Id. at 475. The circuit court observed:

> It is true that the statute before us contemplates a regulatory role for the agency. However, the implicit delegation of duties concerning the regulations for administrative appeals is limited to precisely that subject and does not extend by its terms or placement to any implication of authority to the agency to "regulate the scope of the judicial power vested by the statute." [Adams Fruit Co., 494 U.S. at 650.]. As Justice Marshall wrote in Adams Fruit, the fact that "Congress envisioned . . . a role for [an administrative agency] in administering [a] statute," by itself "does not empower the Secretary to regulate the scope of the judicial power vested by the statute." Id. Just so here. The fact that an agency has made a determination such as the establishment of regulations governing administrative appeals, does not empower it to "'bootstrap itself in an area in which it has no jurisdiction,'" id. (quoting Federal Maritime Comm'n v. Seatrain Lines, Inc., 411 U.S. 726, 745 (1973) (specifically the grant of jurisdiction to the courts)).

> Moreover, administrative agencies have no particular expertise in determining the scope of an Article III court's jurisdiction. Of course, "practical agency expertise is one of the principal justifications behind Chevron deference." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 651-52 (1990). Absent congressional delegation, if an agency has promulgated a regulation outside the scope of its specialized knowledge, courts will not defer to it. See, e.g., Professional Reactor Operator Soc'y v. NRC, 939 F.2d 1047, 1051 (D.C. Cir. 1991) (affording no Chevron deference to agency interpretations of statutes "outside the agency's particular expertise and special charge to administer"). It goes without

11

saying that the jurisdiction of the federal courts is outside agencies' expertise. See, e.g., Florida Manufactured Hous. Ass'n, Inc. v. Cisneros, 53 F.3d 1565, 1574 n.2 (11th Cir. 1995); Ramey, 9 F.3d at 136 n.7 (explaining that "agencies can bring no particular expertise to the subject").

Id. at 479.

The Ninth Circuit Court of Appeals recently considered a case in which the agency promulgated a regulation to address a statutory ambiguity regarding the time for filing. Dandino, Inc. v. U.S. Dep't of Transportation, 729 F.3d 917, 920 n.1 (9th Cir. 2013). The statute provided a 30 day time period but failed to specify from what event the 30 days was to be counted. Id. The agency supplied the operative event by promulgating a regulation that deemed a filing to be timely if made within 30 days of service of the Final Agency Order. Id. The circuit court stated:

> The [U.S. Department of Transportation] has promulgated a regulation that may conflict with our holding. The regulation, 49 C.F.R. § 386.67(a), parrots the text of [49 U.S.C. § 521(b)(9)], except that it addresses the ambiguity by explaining that a party may petition a court of appeal for review "within 30 days of service of the Final Agency Order." 49 C.F.R. § 386.67(a) (emphasis added). We do not defer to the DOT's regulation. It is well-established that "[t]he Agency's position on [our] jurisdiction is not entitled to deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)." Our Children's Earth Found. v. EPA, 527 F.3d 842, 846 n.3 (9th Cir. 2008); see also Lindstrom v. United States, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) ("Determining federal court jurisdiction is exclusively the province of the courts regardless of what an agency may say.") (internal quotation marks and citation omitted); Murphy Exploration & Prod. Co. v. U.S. Dep't of the Interior, 252 F.3d 473, 478 (D.C. Cir. 2001) ("Chevron [deference] does not apply to statutes that . . . confer jurisdiction on the federal courts."); Bamidele v. INS, 99 F.3d 557, 561 (3d Cir. 1996) ("A statute of limitations is not a matter within the particular expertise of the INS. Rather, we consider this a clearly legal issue that courts are better equipped to handle.") (internal quotation marks and citation omitted).

Id.

Similar to other circuits, the Federal Circuit has determined that if the agency's

interpretation of a statute does not call upon the agency's expertise, the court "should refuse to enforce" the interpretation. United States v. Grumman Aerospace Corp., 927 F.2d 575, 582 (Fed. Cir. 1991). The Federal Circuit has advised further:

> Courts appropriately accord considerable weight to interpretations of an agency with expertise when a statute is ambiguous. Chevron, 467 U.S. at 844. As we said in Wilson v. United States, 917 F.2d 529, 535-36 (Fed. Cir. 1990) (citing Chevron, 467 U.S. at 842-44), "when a statute is silent or ambiguous with respect to the specific issue, the administrative agency's interpretation, if reasonable, is to be followed by the court." Courts thus acknowledge the proper role for experts in policymaking. At the same time, we should refuse to enforce agency interpretations when the statute is not ambiguous and when the interpretation neither demands expertise of any agency nor accords with the thrust of the statute. Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368 (1986). As was said in Office of Communication of the United Church of Christ v. Federal Communications Commission, 707 F.2d 1413, 1422-23 (D.C. Cir. 1983), '[t]o do otherwise would risk diluting the judiciary's power to stand guard against bureaucratic excesses by ensuring that administrative agencies remain within the bounds of their delegated authority. Indeed, it is the quintessential function of the reviewing court to interpret legislative delegations of power and to strike down those agency actions that traverse the limits of statutory authority."

Id.; see also Hartman v. United States, 694 F.3d 96, 98 n.1 (Fed. Cir. 2012) ("We see no reason why our review of tax regulations should not be guided by agency expertise pursuant to Chevron to the same extent as our review of other regulations.") (quoting Mayo Found. for Med. Educ. & Research, 131 S. Ct. at 713).

The case law reflects a consistent view regarding the limits of Chevron deference. Such "'deference is not required where the interpretation of a particular statute does not implicate agency expertise in a meaningful way.'" Ibarra v. Holder, 736 F.3d 903, 918 n.19 (10th Cir. 2013) (quoting Singh v. Ashcroft, 383 F.3d 144, 151 (3d Cir. 2004).

The judicial review withholding provision at issue in the instant motion states that "[n]othing in subclause (I) shall be construed to provide an independent cause of action or right to administrative or judicial review with regard to the termination provided under such subclause." § 1395w-3(a)(1)(D)(i)(IV). "Courts of appeals uniformly agree, across a variety of contexts, that the expression 'shall not be subject to judicial review' imposes a jurisdictional limitation when included in a statutory provision." Shweika, 723 F.3d at

718 n.3 (citing <u>J.S. v. T'Kach</u>, 714 F.3d 99, 103-04 (2d Cir. 2013) (witness-relocation statute); <u>Morris v. Office of Compliance</u>, 608 F.3d 1344, 1347 (Fed. Cir. 2010) (Congressional Accountability Act); <u>Sierra Club v. Otter Tail Power Co.</u>, 615 F.3d 1008, 1020 (8th Cir. 2010) (Clean Air Act); <u>Al–Siddiqi v. Achim</u>, 531 F.3d 490, 494 (7th Cir. 2008) (statute authorizing detention of aliens); <u>Jordan Hosp., Inc. v. Shalala</u>, 276 F.3d 72, 77 (1st Cir. 2002) (Medicare Act); <u>Nat'l Coal. to Save Our Mall v. Norton</u>, 269 F.3d 1092, 1095 (D.C. Cir. 2001) (statute approving construction of a World War II memorial)).

The language at issue in MIPPA, § 1395w-3(a)(1)(D)(i), clearly purports to impose a limitation on federal court jurisdiction.  And, as defendant asserts, the language of § 414.425(f)(2)(vi), which provides that "the CMS 'determination is final and not subject to administrative or judicial review,'" is intended to bar this court's jurisdiction over plaintiff's complaint.  <u>See</u> Def.'s Mot. 12.

Although HHS possesses the expertise to administer the Medicare program generally, it is without the expertise to determine a federal court's subject matter jurisdiction.  Rather, it is the federal courts that "are [the] experts when it comes to determining the scope of federal-court subject-matter jurisdiction."  <u>Shweika</u>, 723 F.3d at 718 (citing <u>Murphy Exploration</u>, 252 F.3d at 479).  Consistent with the Federal Circuit's guidance, and that of numerous other circuits, the court does not defer to an agency's regulatory interpretation that purports to define the court's subject matter jurisdiction.  Thus, defendant is entitled to no <u>Chevron</u> deference for its interpretation of 42 C.F.R. § 414.425(f)(2)(vi).

Moreover, it is unnecessary for the court to consider whether § 1395w-3(a)(1)(D)(i) precludes this court's jurisdiction over plaintiff's claim, because the Federal Circuit has said it does not.  <u>See</u> <u>Cardiosom II</u>, 656 F.3d at 1324.

The court has jurisdiction to consider plaintiff's claim.  Defendant's motion to dismiss for lack of jurisdiction is **DENIED**.

The court now considers defendant's argument that plaintiff fails to state a claim for which relief may be granted.

III.     DEFENDANT'S RULE 12(b)(6) MOTION

Defendant alternately brought a motion to dismiss under Rule 12(b)(6), Def.'s Mot. 1, which as previously discussed, the court considers under Rule 56.  Asserting that plaintiff has no legal basis for its claim, defendant urges the court to dismiss the complaint.  Def.'s Mot. 12-13.  In support of its position, defendant again points to its interpretation of the implementing regulation, 42 C.F.R. § 414.425(f)(2)(vi).  Defendant avers that its regulatory interpretation merits Chevron deference.  Id.

Defendant's request for deference to its regulatory interpretation is properly analyzed under Auer v. Robbins, 519 U.S. 452, 461 (1997) (stating that an agency's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted).  For the reasons discussed below, the court finds that: (1) HHS's interpretation of the pertinent regulation 42 C.F.R. § 414.425(f)(2)(vi) is not entitled to Auer deference; and (2) the regulation does not preclude plaintiff's Tucker Act claim.

A.     The Applicable Legal Standards

1.     Summary Judgment

A motion for summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  The moving party has the initial burden of establishing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law."  Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361, 1366 (Fed. Cir. 2001).  In considering a motion for summary judgment, the court draws all inferences in favor of the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Mann v. United States, 334 F.3d 1048, 1050 (Fed. Cir. 2003).  If the court finds that a rational trier of fact could not find for the nonmoving party, then there is no genuine issue for trial and the movant is entitled to summary judgment.  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587).

Summary judgment is particularly appropriate where, as in this case, the issue to be decided fundamentally concerns questions of law.  Huskey v. Trujillo, 302 F.3d 1307, 1310 (Fed. Cir. 2002) ((citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) "Summary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law.")).

15

2.	Deference to an Agency's Interpretation of Its Regulation Is Inappropriate in Certain Circumstances

An agency's interpretation of its own regulation is generally entitled to substantial deference.

> An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulations being interpreted." Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171 (2007) (internal quotation marks omitted); see Auer v. Robbins, 519 U.S. 452, 461 (1997); Haas v. Peake, 525 F.3d 1168, 1186 (Fed. Cir. 2008); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (holding that an agency's interpretation of its regulations is entitled to "substantial deference" unless "an alternative reading is compelled by the regulation's plain language").

Mason v. Shinseki, 743 F.3d 1370, 1374-75 (Fed. Cir. 2014). The Supreme Court has limited the application of Auer to instances in which the regulation is unambiguous.

> In Auer, we held that an agency's interpretation of its own regulation is entitled to deference. [Auer, 519 U.S. at 461.]  See also Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945).  But Auer deference is warranted only when the language of the regulation is ambiguous. The regulation in this case, however, is not ambiguous—it is plainly permissive.  To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation.  Because the regulation is not ambiguous . . . Auer deference is unwarranted.

Christensen v. Harris County, 529 U.S. 576, 588 (2000).  Recently, the Supreme Court provided further guidance on the application of Auer.

> Although Auer ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation, even when that interpretation is advanced in a legal brief, see Chase Bank USA, N.A. v. McCoy, 562 U.S. ——, ——, 131 S. Ct. 871, 880 (2011); Auer, 519 U.S. at 461-62, this general rule does not apply in all cases. Deference is undoubtedly inappropriate, for example, when the agency's interpretation is "'plainly erroneous or inconsistent with the regulation.'" Id., at 461 (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)). And deference is likewise unwarranted when there is reason to suspect that the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in

question." <u>Auer</u>, <u>supra,</u> at 462; <u>see also</u>, <u>e.g.</u>, <u>Chase Bank</u>, <u>supra</u>, at ——, 131 S. Ct. at 881. This might occur when the agency's interpretation conflicts with a prior interpretation, <u>see</u>, <u>e.g.</u>, <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 515 (1994), or when it appears that the interpretation is nothing more than a "convenient litigating position," <u>Bowen v. Georgetown Univ. Hospital</u>, 488 U.S. 204, 213 (1988).

<u>Christopher v. Smithkline Beecham Corp.</u>, 132 S. Ct. 2156, 2166 (2012).

B.    Discussion

HHS promulgated the regulation, § 414.425(f)(2)(vi), through its general rulemaking authority in the Medicare program, as amended by MIPPA.  <u>See</u> Def.'s Reply 6 (citing 42 U.S.C. § 1302); <u>see also</u> <u>Sebelius v. Auburn Reg'l Med. Ctr.</u>, 133 S. Ct. 817, 826 (2013) ("Congress vested in the [HHS] Secretary large rulemaking authority to administer the Medicare program.").  In <u>Cardiosom II</u>, the Federal Circuit said that the judicial withholding provision, § 1395w-3(a)(1)(D)(i), in the governing statute was subject to three possible interpretations.  <u>Cardiosom II</u>, 656 F.3d at 1327-29.  The Circuit Court's view that several potential interpretations exist for this statutory provision would appear to support a finding that HHS's interpretation of the ambiguous provision is entitled to deference—provided the agency's implementing regulation is "based on a permissible construction of the statute."  <u>See</u> <u>Chevron</u>, 467 U.S. at 843.

The text of the pertinent regulation states: "The Determining Authority's determination is final and not subject to administrative or judicial review." § 414.425(f)(2)(vi).  The "Determining Authority" is identified as CMS. § 414.425(f)(2). The regulatory language comports with one of the possible interpretations offered by the Federal Circuit.  <u>See</u> <u>Cardiosom II</u>, 656 F.3d at 1328 (specifically that "Congress could have intended that the statute not be read to provide . . . judicial review with regard to . . . the rewards from the special fund created by statute.").  Accordingly, the court does not disagree that § 414.425(f)(2)(vi) is based on a permissible construction of 1395w-3(a)(1)(D)(i).[2]

---

[2]    Had this court analyzed defendant's deference argument under <u>Chevron</u>, no deference would have been given to defendant's interpretation.  <u>See</u> <u>Schuler Indus., Inc. v. United States</u>, 109 F.3d 753, 755 (Fed. Cir. 1997) ("[L]egislative regulations are entitled to 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'") (citing <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 844 (1984)); <u>see also</u> <u>Rite Aid Corp. v. United States</u>, 255 F.3d 1357, 1359 (Fed. Cir. 2001) ("A regulation is manifestly contrary to the statute if it is outside the scope of authority delegated under the

HHS's interpretation of § 414.425(f)(2)(vi), however, is another matter.  HHS construes the regulation to prevent an aggrieved supplier who has received payment on a damages claim through the CMS administrative process from maintaining a separate Tucker Act claim for additional damages.  See Def.'s Mot. 13 ("[T]his Court has no authority to review the damages award or [to] award Cardiosom a greater amount.") (emphasis added).

Review of the plain language of § 414.425(f)(2)(vi) shows that HHS did not promulgate a regulation that would bar a supplier from bringing a Tucker Act claim for additional damages.  HHS's interpretation of the statute's judicial review withholding provision, § 1395w-3(a)(1)(D)(i), is made clear in the regulation it promulgated through the process of notice and comment rulemaking, § 414.425(f)(2)(vi).  Thus, the agency's position in this litigation reflects its regulatory interpretation and not its statutory interpretation.

Deference to an agency's interpretation of its own regulations is analyzed under Auer v. Robbins, and subsequent cases.  See, e.g., 3 Charles H. Koch, Jr. et al., Administrative Law and Practice § 10:26[1] ("Auer v. Robbins has become the leading recent authority for the well-established principle that an agency's interpretation of its own rules must be given substantial deference."); see also Decker v. Nw. Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013) (providing "Auer deference" to the agency's interpretation where there was "no indication that its current view [was] a change from prior practice or a post hoc justification adopted in response to litigation").

"The construction of a regulation is a question of law."  Gose v. U.S. Postal Serv., 451 F.3d 831, 836 (Fed. Cir. 2006) (citing Kent v. Principi, 389 F.3d 1380, 1384 (Fed. Cir. 2004) "[I]nterpretation of a statute or regulation is a question of law . . . ." (internal quotations omitted)).  "To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning."  Lockheed Corp. v. Widnall, 113 F.3d 1225, 1227 (Fed. Cir. 1997) (citing Perrin v. United States, 444 U.S. 37, 42 (1979)).

Under Christensen, an agency is entitled to Auer deference "only when the language of the regulation is ambiguous," Christensen, 529 U.S. at 588.  In this case, HHS seeks dismissal of plaintiff's claim based on an alleged unavailability of "judicial

---

statute.").  Because § 1395w-3 said nothing about limiting a supplier's claims in this court, defendant's proposed regulatory interpretation exceeds the scope of its delegated authority under the statute.

review" of CMS's administrative decision.  § 414.425(f)(2)(vi).  Thus, to merit <u>Auer</u> deference, the phrase "judicial review" must be ambiguous.

In determining whether <u>Auer</u> deference is merited, the court considers first whether the subject phrase is an ambiguous one, and second, whether HHS's interpretation reflects a fair and considered judgment on the matter at issue.

   1. The Phrase "Judicial Review" is Not Ambiguous

The court considers below a number of relevant sources—including legal dictionary, statutes, and case law—that show the phrase "judicial review" has a judicially settled meaning, which is not ambiguous.

The Supreme Court has determined that the phrase "judicial review" is a term of art.  <u>See</u> <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 313 n.35 (2001) (considering the meaning of "judicial review" and "habeas" in the immigration context and referring to both as "terms of art"), <u>superseded by statute on other grounds</u>, Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief ("Real ID Act"), Pub. L. No. 109-13, 119 Stat. 310 (2005) (codified at 8 U.S.C. § 1252(a)(2)(D)).

The case law instructs that "[w]ords with a fixed legal or judicially settled meaning, where the context so requires, must be presumed to have been used in that sense."  <u>Huffman v. Comm'r</u>, 978 F.2d 1139, 1145 (9th Cir. 1992) (citing 1 Ellie Grinols, Mertens Law of Federal Income Taxation § 3.36 (1991)).  Moreover,

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

<u>Sekhar v. United States</u>, 133 S. Ct. 2720, 2724 (2013) (quoting <u>Morissette v. United States</u>, 342 U.S. 246, 263 (1952)).

The phrase "judicial review" is defined as:

> A court's power to review the actions of other branches or levels of government; esp., the courts' power to invalidate legislative and executive actions as being unconstitutional.  2. The constitutional doctrine providing

19

for this power.  3. A court's review of a lower court's or an administrative body's factual or legal findings.

Black's Law Dictionary 924 (9th ed. 2009).

The Medicare Act (which includes § 1395w-3)[3] provides for judicial review of certain claims.  Specifically, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act."  Heckler v. Ringer, 466 U.S. 602, 605 (1984) (footnote omitted) (citing 42 U.S.C. § 1395ff(b)(1)(C)).  Section 405(g), which pertains to Social Security claims, permits an individual to file a civil action in "the district court of the United States for the judicial district in which the plaintiff resides," to seek review of a decision which "shall be subject to review in the same manner as a judgment in other civil actions."  42 U.S.C. § 405(g).

Judicial review of an agency action has been governed by the Administrative Procedure Act (APA) since 1946.  See 5 U.S.C. §§ 701-706.  Section 706 of the APA, which governs the scope of judicial review, provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," and shall do so by "review[ing] the whole record or those parts of it cited by a party." § 706.

From the foregoing references, the meaning of the phrase "judicial review" is clear.  "Judicial review" contemplates that a court will review a decision issued by another tribunal.  The language of the relevant regulatory provision is as follows: "The Determining Authority's determination is final and not subject to administrative or judicial review."  Defendant has pointed to nothing that suggests the phrase "judicial review," as used in § 414.425(f)(2)(vi), is ambiguous, or that the use of the term in the Medicare Act is inconsistent with its commonly understood definition.  Because the court does not find the phrase "judicial review" in § 414.425(f)(2)(vi) to be ambiguous, HHS is entitled to no Auer deference for its interpretation of the regulation.

> 2.     HHS's Proposed Regulatory Interpretation Does Not Reflect Its Fair and Considered Judgment

---

[3]     MIPPA amended Title XVIII of the Social Security Act, commonly known as the Medicare Act.  See Medicare Improvements for Patients and Providers Act of 2008, Pub. L. No. 110-275, 122 Stat. 2494 (codified at 42 U.S.C. § 1395 et seq., as amended).

Had the court found the phrase "judicial review" to be ambiguous, which it does not, defendant still would not merit <u>Auer</u> deference for its interpretation of the regulation. "[D]eference is . . . unwarranted when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" <u>Christopher</u>, 132 S. Ct. at 2166 (quoting <u>Auer</u>, 519 U.S. at 462).

There is ample evidence that HHS's interpretation of the regulatory provision § 414.425(f)(2)(vi), as advanced in this case, does not reflect the agency's fair and considered judgment; rather it reflects the agency's most recent litigating position— which has shifted over time. As plaintiff correctly points out, defendant's current regulatory interpretation differs from the interpretation it proffered earlier in May 2012. <u>See</u> Pl.'s Opp. 9 (citing Def.'s Supp. Br. 1-2, May 29, 2012, ECF No. 70).

After the Federal Circuit issued <u>Cardiosom II</u>, the judge to whom this action was previously assigned issued an order directing the parties to file

> supplemental briefing on the meaning of the language in 42 U.S.C. § 1395w-3(a)(1)(D)(i) in light of the fact that it cannot be interpreted as unambiguous withdrawal of Tucker Act jurisdiction. The supplemental briefs should include a discussion of the interaction between the administrative process established by 42 C.F.R. § 414.425 and any judicial review purportedly allowed by the statute.

Order, Mar. 26, 2012, ECF No. 63.

Defendant responded that <u>Cardiosom II</u> limited this court's jurisdiction over plaintiff's claims to "a deferential review of the damages awarded by CMS." Def.'s Supp. Br. 8. The regulatory interpretation that defendant endorsed would "not allow Cardiosom to pursue claims in this Court arising from its contract termination separate and independent from those presented as part of the administrative process." Def.'s Supp. Br. 13-14. For example, in defendant's view, because the CMS administrative process did not permit suppliers to seek lost profits, § 414.425(d)(6), Cardiosom could not seek lost profits in this court; but Cardiosom could seek judicial review of the CMS administrative decision, under a deferential standard.

Dismissive of plaintiff's criticism that it now raises a new argument, defendant asserts that "[e]ven if true, this is no reason to deny the motion. Subject-matter jurisdiction can be challenged at any time by the parties." Def.'s Reply 8. Defendant reiterates its earlier argument that if the court does not find that <u>Chevron</u> deference is warranted, "the Court still should conclude that its role is limited to deferential review of

the HHS decision on Cardiosom's administrative claim," as "the relevant MIPPA provision can also be interpreted to bar judicial review of claims 'independent' of claims submitted as part of the HHS administrative process."[4] Id. (citing Def.'s Supp. Br. 8-19).

Defendant, however, points to no document—other than the current motion—in which it has interpreted the subject regulation as it does here.  Review of both the proposed and final rule, as published in the Federal Register, shows that defendant gave no indication that it would interpret the regulation as it now does.  See Medicare Program; Payment Policies Under the Physician Fee Schedule and Other Revisions to Part B for CY 2010, 74 Fed. Reg. 33,520, 33644 & 33653 (proposed July 13, 2009); Medicare Program; Payment Policies Under the Physician Fee Schedule and Other Revisions to Part B for CY 2010, 74 Fed. Reg. 61,738, 61,934 & 61,999 (Nov. 25, 2009) (to be codified at 42 C.F.R. § 414.425).

An agency communicates its intended interpretation of a proposed regulation in its Federal Register notice.  See, e.g., Hillyard v. Shinseki, 695 F.3d 1257, 1260 (Fed. Cir. 2012).  In the Hillyard case, for example, the Veteran's Administration (VA) interpreted a regulation to mean that a veteran to whom it denied benefits could file only one request for revision of that decision, in which the veteran alleged "clear and unmistakable error" (known as a CUE).  Id. at 1258.  Mr. Hillyard disagreed, arguing that the regulation permitted multiple CUE challenges—as long as each presented a new theory.  Id.  The parties' dispute centered on the use of the word "issue" in the regulation, id., which provided that: "Once there is a final decision on a motion . . . relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of clear and unmistakable error" 38 C.F.R. § 20.1409(c) (emphasis added).  Mr. Hillyard understood the word "issue" to mean a particular CUE theory, while the VA construed it to refer to the veteran's disability claim.  Hillyard, 695

---

[4]     The jurisdiction of this court is defined by 28 U.S.C. § 1491 (2012).  Nothing in the court's governing statute can be read to provide it with jurisdiction to review an agency's determination as to the amount of damages paid to plaintiff through the prescribed administrative process.  See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (stating that the Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706.").  Regardless of HHS's interpretation of either the statutory provision, 42 U.S.C. § 1395w-3(a)(1)(D)(i), or the regulatory provision, 42 C.F.R. § 414.425(f)(2)(vi), plaintiff could not maintain a claim in this court for review of the CMS administrative decision.

F.3d at 1258.  The Federal Circuit looked back to the VA's promulgation of the rule 14 years earlier, at which time the VA had discussed its proposed rule with an illustrative example; the offered example made clear that after issuing a decision, the VA would hear only one CUE challenge.  Id.  at 1259 (quoting 63 Fed. Reg. 27,538 (proposed May 19, 1998) (codified at 38 C.F.R. pt. 20)).  The Federal Circuit upheld the agency's regulatory construction, observing that "[t]he interpretation proffered by the VA in this case is no different from the one set forth in its notice of rulemaking and is consistent with the language of the regulation." Id. at 1260.

In this case, HHS has provided no such clear support for its proposed interpretation in its Federal Register notices.  HHS said in the notices that it was "establish[ing] a one-time process" that "would ensure a thorough review of a supplier's claim for damages" and would "not [be] overly burdensome to those suppliers choosing to participate in this review process." 74 Fed. Reg. at 61,999 (emphasis added).  HHS estimated that the cost to prepare a claim for submission to CMS would be $102, a calculation based on three hours of work by an accountant (at $34 per hour) and by a company official responsible for reviewing and gathering the necessary documents.  Id. HHS committed to making "every effort" to return a decision within four months of receipt of the claim.  Id. at 61,936.

At no point did HHS mention either the right of a supplier—or the lack thereof— to bring a claim for breach of contract or takings in this court.  Nor did HHS state that it would oppose any such claim brought by a supplier who received partial damages through the administrative process.  Rather, HHS presented the proposed claims process as a simple, straight-forward process in which a supplier gathers and submits information for specified expenses, and can look forward to receipt of compensation fairly quickly.

The difference between HHS's current regulatory interpretation—that the court has no jurisdiction to consider Cardiosom's claim and that Cardiosom cannot state a claim—and its earlier interpretation—that the court's jurisdiction is limited to deferential review of the agency's award to Cardiosom—suggests that what the agency is presenting to the court may not reflect the fair and considered judgment of the agency.  See Christopher, 132 S. Ct. at 2166 (stating that an agency's interpretation may not reflect its fair and considered judgment "when the agency's interpretation conflicts with a prior interpretation").

HHS's effort to advance its litigating position through its chosen regulatory interpretation, and the lack of clear notice regarding the agency's position prior to the filing of its current motion, also suggests that the offered interpretation may be more reflective of a favorable litigating position than a fair and considered judgment.  See id.

(stating that no deference is due to a "convenient litigating position") (quoting <u>Bowen</u>, 488 U.S. at 213); <u>see also</u> <u>Am. Signature, Inc. v. United States</u>, 598 F.3d 816, 827 (Fed. Cir. 2010) ("Where the agency's interpretation seeks to advance its litigating position, deference is typically not afforded to the agency's position announced in a brief.") (citing <u>Bowen</u>, 488 U.S. at 213).

Evidence that HHS's interpretation of the subject regulation reflects its own fair and considered judgment is wanting, and without such support the agency does not show any entitlement to <u>Auer</u> deference for its interpretation of 42 C.F.R. § 414.425(f)(2)(vi).

        3.      Title 42 C.F.R. Section 414.425(f)(2)(vi) Does Not Preclude Cardiosom's Claim

Because no deference is accorded to HHS's interpretation of its regulation, the court now considers whether the regulation itself could be read to bar the claims Cardiosom has brought here. As previously discussed, the term "judicial review"—as it appears in § 414.425(f)(2)(vi)—is a term of art. In the court's view, the regulation cannot be read to preclude plaintiff's Tucker Act claim. <u>See</u> <u>Lockheed Corp.</u>, 113 F.3d at 1227 ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning.") (citing <u>Perrin</u>, 444 U.S. at 42). The regulatory prohibition against this court's judicial review of the agency's final decision on plaintiff's administrative claim does not—and cannot— interfere with this court's Tucker Act jurisdiction which allows a plaintiff to bring claim, for which it will bear the burden of proof, as any such claimant would. Nor can the regulatory prohibition against judicial review of the agency's administrative determination be construed to bar a takings claim, as defendant urges. Def.'s Mot. 13.

It merits mention that not only must plaintiff prove liability in the instant action, it also bears the burden of showing that any damages it seeks from this court do not include any of the amounts already recouped through the CMS administrative process. <u>See</u> Cariosom II, 656 F.3d at 1328-29 (cautioning that an aggrieved supplier may not obtain a double recovery for the same injuries).

The court holds that 42 C.F.R. § 414.425(f)(2)(vi) does not preclude plaintiff from bringing either a Tucker Act claim for breach of contract damages or a Fifth Amendment takings claim. Defendant's motion to dismiss on the basis that plaintiff has failed to state a claim for which relief may be granted, as converted to a motion for summary judgment, is **DENIED**.

4.      MIPPA's Legislative History Does Not Restrict a Supplier's
        Contract Remedies

Of note, the legislative history for MIPPA section 154 provides no indication that Congress intended to limit a supplier's contract remedies.  Rather, the relevant history shows that Congress focused its attention on the concerning manner in which CMS had conducted the Round 1 contracting process.  See Medicare's DMEPOS[5] Competitive Bidding Program: Hearing Before the Subcomm. on Health of the H. Comm. on Ways & Means (DMEPOS hearing), 110th Cong. (2008) ("Hrg. Rpt."), available at http://www.gpo.gov/fdsys/search/home.action (follow Congressional Hearings hyperlink on "Browse" bar on right).

Representative Fortney Stark, as Chairman of the House Subcommittee on Health of the Committee on Ways & Means, convened the DMEPOS hearing on May 6, 2008.  Hrg. Rpt. 1.  On June 12, 2008, Representative Stark introduced a bill to "delay and reform" the Medicare DMEPOS Competitive Acquisition Program (CAP).  Medicare DMEPOS Competitive Acquisition Reform Act of 2008, H.R. 6252, 110th Cong. (2008), 2007 CONG US HR 6252 (Westlaw).

Eight days later, on June 20, 2008, Representative Charles Rangel introduced the bill that was later enacted as MIPPA.  Medicare Improvements for Patients and Providers Act of 2008, H.R. 6331, 110th Cong. (2008) (enacted), 2007 CONG US HR 6331 (Westlaw).  The bill introduced by Representative Stark, H.R. 6252, was included in its entirety in the bill introduced by Representative Rangel, H.R. 6331, as Section 154.  Compare H.R. 6252 § 2 (Delay in and Reform of Medicare DMEPOS Competitive Acquisition Program), with H.R. 6331 § 154 (same).  Review of the judicial review withholding provision in both bills, and review of the resulting statute, reveal no difference in the wording.  Compare H.R. 6252 § 2(a)(1)(A)(iv), and H.R. 6331 § 154(a)(1)(A)(iv), with § 1395w-3(a)(1)(D)(i).

Because the bill Representative Stark introduced, H.R. 6252, subsequently became part of H.R. 6331 (as § 154), the DMEPOS hearing convened by Representative Stark was effectively a hearing on H.R. 6331 § 154—which in turn became MIPPA § 154 (42 U.S.C. § 1395w-3).  The DMEPOS hearing thus furnishes legislative history for MIPPA § 154, the legislation at issue in this matter.

---

[5]      Durable Medical Equipment, Prosthetics, Orthotics, and Supplies

In announcing the hearing, Representative Stark, said "[w]e have heard from both suppliers and beneficiary advocates that the DMEPOS competitive bidding program is not working as well as it is supposed to.  I look forward to hearing their concerns, as well as from CMS, as we consider whether changes need to be made before the program is further expanded."  Hrg. Rpt. 2.  The acting administrator of CMS, Mr. Kerry Weems, testified and was questioned by eight[6] committee members, all of whom were critical of the CAP as it was then implemented.  See Hrg. Rpt. 6-32.  There was no mention during the DMEPOS hearing of the impact of any changes in the CAP on the expected contract awardees,[7] and no mention of the available remedies if any changes were made after CMS executed contracts with awardees.  Instead, the concerns expressed by each Committee member were limited exclusively to the problematic manner in which CMS had managed the Round 1 contracting process, and the resulting impact on unsuccessful suppliers and Medicare recipients.

---

[6]      Fortney "Pete" Stark, Dave Camp, Mike Thompson, Sam Johnson, Xavier Becerra, Phil English, Lloyd Doggett, and Pat Tiberi.

[7]      On the day of the hearing, CMS had not yet awarded the Round 1 contracts.  See Hrg. Rpt. 7.  CMS awarded Cardiosom its contract on May 21, 2008.  Compl. ¶ 16.

IV.     CONCLUSION AND FURTHER ACTION

The court has denied defendant's motion to dismiss.

Left pending before the court are the parties' fully-briefed cross-motions for summary judgment, together with a consolidated statement of uncontroverted facts.  ECF Nos. 36, 37-1,[8] 41, 44-46.  As provided in the court's March 26, 2012 Order, the court defers its consideration of plaintiff's takings claim until after the court rules on plaintiff's breach of contract claim.  Order, ECF No. 63.  The court anticipates no further briefing before issuing a decision on the parties' cross-motions for summary judgment regarding liability on plaintiff's breach of contract claim.  Oral argument on the cross-motions is deemed unnecessary.

IT IS SO ORDERED.

<u>s/ Patricia E. Campbell-Smith</u>
PATRICIA E. CAMPBELL-SMITH
Chief Judge

---

[8]     The previous judge struck the statement of uncontroverted facts filed as ECF No. 37, as prematurely filed.  Order, ECF No. 38.  Plaintiff properly refiled the statement as ECF No. 46, but did not refile the Declaration of Kevin P. Greisl, earlier filed as ECF No. 37-1.  As the Greisl declaration is incorporated by reference in the statement of facts at ECF No. 46, the undersigned will consider it.